**BYRNES, O'HERN & HEUGLE, LLC**
John F. Byrnes, Esq. (412952022)
195 East Bergen Place
Red Bank, New Jersey 07701
Telephone: (732) 219-7711
Email: jbyrnes@byrnesohern.com
*Attorneys for Plaintiff Amy Stemmler*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMY STEMMLER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, BHARAT CHADHA, ABC CORPS. 1-10, and JOHN DOES 1-10,<br><br>　　　　　　Defendants. | Civil Action No.: 3:25-cv-16568-RKJTQ<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, Amy Stemmler, residing at 17 Brown Place, Red Bank, NJ, by way of Complaint against Defendants, JPMorgan Chase, JPMorgan Chase Bank, National Association, Bharat Chadha, ABC Corps. 1-10, and John Does 1-10, says:

### JURISDICTION AND VENUE

1.　　Plaintiff, Amy Stemmler (hereinafter "Plaintiff"), is an individual who resides at 17 Brown Place, Red Bank, NJ 07701.

2.　　Defendant JPMorgan Chase Bank, National Association (hereinafter the "Chase" or "Defendant") is, is a foreign profit corporation, authorized to conduct business as a foreign corporation in the State of New Jersey. Upon information and belief, Defendant is an

1

Ohio corporation with its principal place of business located at 1111 Polaris Parkway, Columbus, OH 43240. ")

3.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and the plaintiff and defendant are citizens of different States.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

## FACTS COMMON TO ALL COUNTS

5.     During her onboarding, Chase presented Plaintiff with policies and procedures concerning discrimination, harassment, retaliation, disability, and workplace accommodations.

6.     Plaintiff understood that Chase promised to provide a discrimination-free workplace.

7.     Plaintiff understood that Chase promised to provide a harassment-free workplace.

8.     Plaintiff understood that Chase promised to engage in an interactive process regarding any requests for reasonable accommodations she might have while employed.

9.     Plaintiff understood that Chase would provide reasonable accommodations for any disability she might have while employed.

10.     Chase promulgated policies that purported to provide the means for Plaintiff to request a reasonable accommodation for her disability.

11.     Chase also promulgated policies that purported to provide the means for Plaintiff to complain about any violation of law or Chase's policies.

2

12.     As will be set forth below, Chase failed to adhere to these policies or enforce them. Instead, Chase and the other named Defendants discriminated against Plaintiff, failed to provide an interactive process, refused to provide a reasonable accommodation, rescinded a reasonable accommodation without cause, retaliated against her for her disability, created a hostile work environment, and ultimately terminated her in violation of New Jersey law.

13.     Defendant Bharat Chadha (hereinafter "Chadha" or "Defendant") worked as Plaintiff's direct supervisor for Chase.

14.     Defendants John Does 1-10 are individuals whose identities are not presently known to Plaintiff but who were directly or indirectly responsible for the damages and violations of law described in this Complaint.

15.     Defendants ABC Corps. 1-10 are entities whose identities are not presently known to Plaintiff but who were directly or indirectly responsible for the damages and violations of law described in this Complaint.

16.     Chase, Chadha, and the other Defendants will collectively be referred to as "Defendant" or "Defendants" in this Complaint.

17.     Plaintiff worked for Chase for more than sixteen (16) years.

18.     Plaintiff began working for Chase on or about January 1, 2008.

19.     During her time working for Chase, Plaintiff exceeded performance expectations.

20.     Plaintiff was an exemplary employee for Chase.

21.     Plaintiff was never subjected to discipline until Defendants began discriminating against her for her disability.

3

22. Plaintiff suffers multiple persistent medical issues.

23. These chronic conditions have been diagnosed by medical professionals.

24. Plaintiff receives ongoing treatment for these issues.

25. These medical conditions qualify as a disability under New Jersey law.

26. Plaintiff is disabled under New Jersey law.

27. For example, Plaintiff suffers from a chronic cough.

28. Plaintiff uses psychotherapy to help control her cough and the anxiety it causes.

29. Plaintiff's coughing in public causes disruption to those around her and causes Plaintiff severe anxiety.

30. Plaintiff keeps a diary, a daily calendar, and a counter to measure her cough-rate and to assess environmental impacts.

31. Plaintiff's cough is severe, defined as coughing from hundreds to over a thousand times a day.

32. Plaintiff's cough is productive, sometimes dispersed and sometimes in fits that make it difficult to stop and or control.

33. Plaintiff's cough can make it difficult to breathe.

34. Plaintiff's cough currently causes extreme anxiety, in the form of anxiety attacks, which further exacerbates her cough.

35. Plaintiff's cough is also affected or triggered by environmental variables, such as changes in temperature, air quality, and odors.

4

36.     Plaintiff is particularly sensitive to perfumes, colognes, and dust that lingers in the air in public spaces.

37.     Plaintiff's cough is also affected or triggered by stress and anxiety of navigating public situations.

38.     Plaintiff is currently able to work out of her home setting because it offers a stable and controlled environment.

39.     Plaintiff manages working from home as she is able to conceal her cough with the mute button during virtual meetings.

40.     Plaintiff's home office provides a regulated environment.

41.     Plaintiff's cough can cause incontinence.

42.     Plaintiff's amitriptyline is also being monitored as a recent increase has caused dizziness and migraines.

43.     Plaintiff is currently under the care of the multiple medical professionals for her conditions.

44.     Plaintiff takes multiple medications for her conditions.

45.     Plaintiff requested a reasonable accommodation from Defendants for her conditions.

46.     Specifically, Plaintiff requested to continue working remotely from her home as she had been allowed to do for the previous sixteen (16) years.

47.     Plaintiff works as a Lead Technical Program Manager.

48.     Plaintiff is able to fully perform the job functions of her role while working remotely.

49. Defendants permitted Plaintiff to work remotely for the first fifteen years of her employment.

50. Indeed, during the COVID-19 pandemic, Defendants permitted many employees to work remotely.

51. Plaintiff performed all her job functions and exceeded expectations during this time period.

52. Inexplicably, Defendants cancelled Plaintiff's remote work accommodation in 2024.

53. Defendants Chase and Dimon implemented a policy that prohibited all remote work for their employees.

54. Defendants Chase and Dimon implemented this policy despite the existence of numerous Chase employees who had already received a reasonable accommodation for their disability in the form of remote work.

55. Defendants implemented this policy despite Plaintiff already having received a reasonable accommodation for her disability in the form of remote work.

56. Defendants Chase and Dimon intended to discriminate against and ultimately terminate anyone who needed a remote work accommodation to perform their job functions for Chase.

57. Defendants began marking Plaintiff as absent from work or not in the office without regard for her existing accommodation.

58. Defendants did this despite Plaintiff's clear need for an accommodation and her exemplary job performance while working remotely.

6

59.    Plaintiff followed Defendants' procedures to request a reasonable remote work accommodation after they cancelled her existing accommodation without warning or justification.

60.    Plaintiff submitted documentation from her doctor describing her disability and need for an accommodation in detail.

61.    This documentation more than meets all applicable standards for proving a disability and requesting an accommodation for same under New Jersey law.

62.    Yet, Defendants refused to engage Plaintiff in an interactive process.

63.    Defendants ignored the medical documentation provided.

64.    Defendants ignored Plaintiff's conditions.

65.    Defendants did not provide an interactive process for Plaintiff.

66.    Defendants denied her request for a reasonable accommodation without justification or excuse.

67.    Defendants denied her request for a reasonable accommodation despite the lack of undue hardship on the Company and their clear ability to provide one for her.

68.    After all, Defendants had already provided the exact accommodation she requested for sixteen years without incident or complaint.

69.    Defendants did not provide any reason for denying the accommodation request.

70.    The requested accommodation would not pose an undue burden on Defendants.

71.     Meanwhile, Plaintiff cannot be physically present in the office with her conditions.

72.     Defendants' denial violated their own policies and procedures.

73.     Defendants' denial violated New Jersey law.

74.     Defendants' failure to engage in the interactive process violated their own policies and procedures.

75.     Defendants' failure to engage in an interactive process violated New Jersey law.

76.     Despite Defendants' blatant refusal to follow New Jersey law or their own procedures, Plaintiff continued to perform all her job functions in an exemplary manner.

77.     Plaintiff continued to work every weekday from her home in the manner she had for years.

78.     Defendant Chadha continued providing assignments and work to Plaintiff.

79.     But, Defendants began a campaign to harass and intimidate Plaintiff into quitting her job.

80.     Defendants began sending disciplinary notices to Plaintiff claiming that she had only been present at work for two percent of the days she was required to work.

81.     Meanwhile, as Defendant Chadha was aware, Plaintiff's attendance was near one hundred percent.

82.     Defendants began threatening Plaintiff with discipline and termination for many months.

83.    Plaintiff lived in a state of constant fear and anxiety during this time period. Defendants' conduct caused her to suffer anxiety attacks.

84.    Plaintiff had been a loyal employee for more than fifteen years, but Defendants decided to drive her from the company because she has a disability.

85.    Defendants forced Plaintiff to jump through hoops all the while knowing they would never grant her any accommodation, even if it were reasonable.

86.    Defendants knew they would terminate Plaintiff for her disability during this period.

87.    Defendants knew they would never grant a remote work accommodation during this period even though it was reasonable to do so.

88.    Defendants forced Plaintiff to undergo additional doctor's visits to provide additional unnecessary documentation, documentation they ultimately ignored when Plaintiff provided it.

89.    Even though she was working diligently with respect to her job responsibilities, and also to obtain the information for her requested accommodation, Defendants continued to harass Plaintiff with disciplinary notices threatening termination.

90.    Defendants did not perform any analysis to determine whether the requested accommodation was reasonable.

91.    Defendants did not provide any reasonable alternative accommodation that would allow Plaintiff to perform her job functions.

92.    Meanwhile, Defendant Dimon pushed workplace policies within Chase designed to eliminate disabled employees like Plaintiff.

93.   Defendant Dimon and the other Defendants conspired to eliminate all employees that required remote work accommodations.

94.   They did so despite the proven success of remote work and similar accommodations within Chase.

95.   They did so without regard for New Jersey law, particularly New Jersey's Law Against Discrimination.

96.   Defendants' absolute refusal to provide any remote work accommodations at all without performing any analysis of whether those accommodations would pose a burden is an illegal policy.

97.   Because of Defendants' violations of law and policy, Plaintiff suffered damages, including but not limited to discomfort, anguish, embarrassment, and shame.

98.   But Defendants went even further to discriminate against Plaintiff.

99.   Plaintiff hired an attorney, but Defendants refused to provide contact information for anyone familiar with Plaintiff's case.

100.   Defendants simply provided Plaintiff with the address and phone number for service of legal process.

101.   Defendants did this, in a retaliatory manner, to intimidate Plaintiff and prevent her from invoking her rights under New Jersey law.

102.   Defendants ultimately terminated Plaintiff on August 5, 2025.

103.   Defendants called Plaintiff into a web conference, which she attended.

104.   During that meeting, Defendants terminated Plaintiff.

105.    Defendants refused to provide any further information about how Plaintiff could appeal their determination or otherwise question their refusal to provide an interactive process or grant the reasonable accommodation she requested.

106.    Upon information and belief, Defendants terminated Plaintiff for being disabled.

107.    Upon information and belief, Defendants terminated Plaintiff for needing accommodations, including but not limited to remote work.

108.    Upon information and belief, Defendants terminated Plaintiff to avoid providing the reasonable remote work accommodation.

109.    Upon information and belief, Defendants terminated Plaintiff in retaliation for requesting a reasonable accommodation for her disability, as well as due to her objecting to the Defendants' prior discriminatory conduct.

110.    Defendants did not take any action to address Plaintiff's complaints about the failure to provide an interactive process or the requested reasonable accommodation.

111.    Defendants did not have any valid or legal justification to terminate Plaintiff.

112.    Defendants did not have any valid or legal justification to terminate Plaintiff's prior remote work accommodation.

113.    Thus, Defendants terminated Plaintiff.

114.    Defendants terminated Plaintiff without holding a hearing.

115.    Defendants terminated Plaintiff without properly investigating her disability or accommodation request.

116.    Defendants terminated Plaintiff without giving her the opportunity to present her side or defend herself.

117.    Upon information and belief, Defendants did not terminate Plaintiff's comparators who are similarly situated.

118.    Upon information and belief, Defendants terminated Plaintiff for making complaints about the discrimination she had suffered and requesting an accommodation.

119.    Upon information and belief, Defendants terminated Plaintiff because they wanted to remove a disabled staff member that required remote work accommodations.

120.    Upon information and belief, Defendants terminated Plaintiff because Defendant Dimon does not want Chase to employ disabled persons that require remote work accommodations.

121.    Upon information and belief, Plaintiff's disability was the predominant reason for her termination.

122.    Upon information and belief, Plaintiff's complaints about discrimination and refusal to accommodate caused Defendants to terminate her.

123.    If Plaintiff were not disabled, Defendants would not have terminated her.

124.    If Plaintiff had not complained about discrimination and harassment, Defendants would not have terminated her.

125.    Plaintiff has been deprived of her wages and benefits as a result of this termination.

126.    Plaintiff has suffered extreme emotional distress and anguish as a result of her termination.

127. Plaintiff has also suffered extreme emotional distress, anguish, embarrassment, and anxiety because of the discrimination and harassment to which Defendants subjected her for the last year.

128. These symptoms will continue for the foreseeable future because Defendants have caused permanent physical and psychological damage to Plaintiff.

129. As a result of Defendants' outrageous conduct, Plaintiff suffered and continues to suffer ongoing economic and emotional distress damages.

## COUNT ONE
(Violation of The New Jersey Law Against Discrimination –
Disparate Treatment and Discrimination)

130. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though more fully set forth herein.

131. New Jersey's Law Against Discrimination ("LAD") prohibits in part, the unlawful employment discrimination against any person by reason of gender expression or gender identity.

132. Defendants' conduct, jointly and severally, violates the LAD, which prohibits unlawful employment discrimination against any person because of race, religion, age, gender, handicap, marital status, national origin, sexual orientation, and other protected characteristics.

133. Plaintiff is disabled.

134. The above-described conduct would not have occurred but for Plaintiff's disability.

135. Plaintiff was also disabled when she was terminated by Defendants.

136.    Defendants did not have an effective anti-discrimination policy in place.

137.    Defendants have not maintained an anti-discrimination policy that is current and effective.

138.    Any purported anti-discrimination policy maintained by Defendants exists in name only.

139.    Defendants did not maintain useful formal complaint structures for victims of discrimination, harassment, or retaliation.

140.    Defendants did not properly train their supervisors and/or employees on the subject of discrimination, harassment, and retaliation.

141.    Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

142.    Defendants did not have a commitment from the highest levels of management that discrimination and harassment will not be tolerated.

143.    As a result of the above harassing and discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and suffers significant economic damages.

144.    As the employer and/or supervisor of Plaintiff, Defendants are vicariously, strictly, or directly liable to Plaintiff pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* because Defendants subjected Plaintiff to discriminatory adverse employment actions.

145.    The affirmative acts of the individual Defendants and other employees of Defendants occurred within the scope of their employment for Defendants, so Defendants

14

are vicariously, strictly, or directly liable to Plaintiff pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

146.    The creation of a hostile work environment was aided by Defendants in delegating power to Plaintiff's supervisors and other male employees to control Plaintiff's day-to-day working environment.

147.    Defendants were also deliberately indifferent, reckless, negligent, and/or tacitly approved the discrimination and/or hostile work environment.

148.    Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms despite the foreseeability of discrimination in the workplace.

149.    By having actual knowledge of the discrimination Plaintiff suffered and failing to promptly and effectively stop it, Defendants violated LAD.

150.    Defendants aided abetted, incited, compelled and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce Plaintiff's supervisors and/or the individual Defendants to commit acts and omissions that were in violation of the LAD by committing affirmatively discriminatory acts toward Plaintiff in violation of  the supervisory duty to halt or prevent discrimination, rendering all Defendants individually and collectively liable to Plaintiff pursuant N.J.S.A. 10:5-12(e).

151.    As a proximate cause of the joint and several unlawful acts and omissions of the Defendants described at length herein, Plaintiff was terminated from her position of employment with Defendants.

152.    As a result of her employer's adverse actions, Plaintiff has suffered damages.

WHEREFORE Plaintiff demands judgment against Defendants, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorneys' fees and cost of suit, and for such other relief as the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of LAD as follows:

A.    Reinstatement of employment and all benefits;

B.    Back pay and benefits;

C.    Front pay and benefits;

D.    Compensatory damages;

E.    Punitive damages;

F.    Prejudgment interest and enhancements to offset negative tax consequences;

G.    Any and all attorneys' fees, expenses and/or costs, including enhancements thereof required to offset negative tax consequences and/or enhancements otherwise permitted under law;

H.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

I.    Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

J.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

K.    Such other and further relief as the Court deems just and equitable.

16

## COUNT TWO
(Violation of The New Jersey Law Against Discrimination –
Retaliation & Improper Reprisal)

153.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though more fully set forth herein.

154.   Defendants took retaliatory action against Plaintiff by terminating her after she complained about discrimination and/or harassment.

155.   Defendants took retaliatory action against Plaintiff by terminating her after she requested a reasonable accommodation.

156.   Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliation in violation of the LAD pursuant to N.J.S.A. 10:5-12(d).

157.   As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

WHEREFORE Plaintiff demands judgment against Defendants, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorneys' fees and cost of suit, and for such other relief as the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of LAD as follows:

      A.    Reinstatement of employment and all benefits;

      B.    Back pay and benefits;

      C.    Front pay and benefits;

      D.    Compensatory damages;

17

E.   Punitive damages;

F.   Prejudgment interest and enhancements to offset negative tax consequences;

G.   Any and all attorneys' fees, expenses and/or costs, including enhancements thereof required to offset negative tax consequences and/or enhancements otherwise permitted under law;

H.   Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

I.   Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

J.   Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

K.   Such other and further relief as the Court deems just and equitable.

## **COUNT THREE**
(Violation of The New Jersey Law Against Discrimination –
Wrongful Termination)

158.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though more fully set forth herein.

159.   Plaintiff complained about discrimination and harassment in the workplace.

160.   Plaintiff requested an accommodation for her disability.

161.   As a direct result of Plaintiff's complaints, her request for an accommodation, and her disability itself, Defendants terminated Plaintiff's employment.

162.    Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful, wrongful termination in violation of the LAD.

WHEREFORE Plaintiff demands judgment against Defendants, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorneys' fees and cost of suit, and for such other relief as the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of LAD as follows:

      A.    Reinstatement of employment and all benefits;

      B.    Back pay and benefits;

      C.    Front pay and benefits;

      D.    Compensatory damages;

      E.    Punitive damages;

      F.    Prejudgment interest and enhancements to offset negative tax consequences;

      G.    Any and all attorneys' fees, expenses and/or costs, including enhancements thereof required to offset negative tax consequences and/or enhancements otherwise permitted under law;

      H.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

      I.    Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

J.      Ordering Defendants to take appropriate corrective action to stop and

prevent retaliation at the workplace;

K.      Such other and further relief as the Court deems just and equitable.

**COUNT FOUR**
(Violation of The New Jersey Law Against Discrimination –
Failure To Provide Interactive Process)

163.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though more fully set forth herein.

164.    Plaintiff requested an accommodation for her disability.

165.    Defendants failed to engage Plaintiff in an interactive process.

166.    Defendants failed to perform a meaningful search to determine whether the reasonable accommodation could be provided.

167.    Defendants failed to provide the requested accommodation despite its objective reasonableness.

168.    Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful, wrongful termination in violation of the LAD.

WHEREFORE Plaintiff demands judgment against Defendants, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorneys' fees and cost of suit, and for such other relief as the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of LAD as follows:

A.      Reinstatement of employment and all benefits;

B.      Back pay and benefits;

C.    Front pay and benefits;

D.    Compensatory damages;

E.    Punitive damages;

F.    Prejudgment interest and enhancements to offset negative tax consequences;

G.    Any and all attorneys' fees, expenses and/or costs, including enhancements thereof required to offset negative tax consequences and/or enhancements otherwise permitted under law;

H.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

I.    Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

J.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

K.    Such other and further relief as the Court deems just and equitable.


## **JURY DEMAND**

Plaintiff demands trial by a jury on all of the triable issues of this complaint.

BYRNES, O'HERN & HEGULE, LLC<br>
*Attorneys for Plaintiff*

Date: December 10, 2025                    BY:    s/ *John F. Byrnes*
                                                                     JOHN F. BYRNES